CITRIX ONLINE Mr. Williamson? May it please the Court, Brett Williamson on behalf of the Plaintiff and Appellant Richard Williamson, the trustee of the At Home Bondholders Liquidated Trust. The 840 patent at issue in this case brought the concept of remote learning into the internet age by allowing presenters and audience members to interact even at a distance without getting specialized hardware or software. This patent greatly disappointed me because I have a pending application at the Patent Office with about four of these features in it. I'm sorry to hear that. Yes, I'm afraid I'm out of luck. I think that's on the record, too. I think so. I think I'm in trouble. If you get the case, you know. Well, Chief Judge Rader, you may have noted that the key improvement here was the ability to do this without needing specialized hardware or software. And the district court committed two errors that rendered this patent virtually worthless. First, violating the bedrock principle that limitations in an embodiment should not be imported into a claim except in special circumstances, none of which is present here. Of course, this is the branch that we talked about earlier. Well, that branch has important restrictions and limitations that I will discuss. Second, and independently, the district court improperly concluded that the strong presumption that a claim limitation not using the term means is not governed by Section 112, Paragraph 6, was overcome here, despite the fact that the district court actually found that the patent, quote, discloses some information regarding composition of the control model in question. And that's in the face of this limitation, when the term means is not used, must show that the limitation is essentially devoid of anything that can be described as structure. So just within the Markman opinion itself, the district court admittedly found structure. Talk to us about Figure 6. It shows the pictorial map. It shows the participants by location. It does, in fact, and it does illustrate a preferred embodiment. But in order for even a preferred embodiment, in order for even the only embodiment of a patent to have its limitations imported into the claim, there has to be one of these situations. First of all, there have to be words or expressions of manifest intent to do so. Here, it just doesn't exist. There's no dispute that it doesn't exist. In the two situations that deal with the illustration in Figure 6, where the word is map, map is used, and map is used only twice in this entire patent. And the remaining Objective 2 language regarding the location of the participants on the map is only used once. In both occasions, that language is preceded by the words preferably or for example. In those instances, as this court's cases say, that is not words or expressions intending to restrict the claim to that embodiment. In fact, it's the opposite. And in fact, this is an even more egregious case by the district court because here, the specification actually defined the term classroom explicitly. And the embodiment that discusses Figure 6 comes immediately after that definition and uses the phrase for example. It couldn't be clearer that this was merely an example and not within the cases that show that it would be allowable to import the restriction. The district court, and I think along the lines of your argument here at Appendix 23, talks about, toward the bottom of the page, in this case, the specification shows that the patentee intended only one type of graphical display of this partially virtual classroom, a display that included a map. I haven't found anything in the specification that says the map is the only one type of graphical display. Did I miss something? No, we agree with the court. It does not state that. And I think what the district court was simply doing is adopting an argument that was advocated by the defendants. But the patent does not limit the graphical display of the classroom to a map. So let's assume that the district court then is wrong. What does graphical display of a classroom mean? It needs to meet the intentions of the invention, which is to have a classroom metaphor. For example, you have a display... ...of seats and podiums, then what is it? Just a blank square on the screen that says this is a virtual space where people can interact? Not at all, Your Honor. It does need to identify the participants and the presenter. It needs to distinguish between the participants and the presenter, so you can see graphically who qualifies as an audience member, who qualifies as a presenter. It needs to have some indicia or a means... But what does that have to do with a classroom? That's just a list of teachers and students. But that's the definition of a classroom. Remove the teacher, you no longer have a classroom. Not necessarily the definition of a graphical display of a classroom. It's a definition of a learning environment or a definition of participants in a learning experience. If I might continue, the display also shows an indicia or a means of designating next to or adjacent to the participants an icon such as raising your hand, colored designations asking the presenter to slow down. Those are additional indicia, to use the phrase you just used, of that classroom metaphor. And the invention shows, and it would be supported by the classroom construction that was proposed by Plantev, that it's the presenter who controls the presentation of the material. All of that is directly within the metaphor of a classroom. It doesn't require a map or this illustration of the specific seating choice. So what's the accused feature that you believe falls within the scope of the claims? The accused feature in this case, and I believe it's shared by all of the accused products, is that there is a listing of the participants. They're not shown... It's not a graphical or a picture of a map, correct? We would argue that it is graphical because it has not only a list, but it has designations next to those names. Let me rephrase my question. It's not a graphical illustration or representation of a classroom? We would argue that it is. It does represent a classroom because it lists the attendees. It distinguishes between attendees and instructor, and it lists next to the attendees designations allowing them to do the sorts of things that students do in a classroom. Raise their hand, ask a question. We would argue that it does represent a classroom, and certainly as defined here. What's clear is there's no argument that the point of novelty in this invention required a map or required that the graphical display show the people on that map. It has nothing to do with the thrust of the invention. Isn't that what the preferred embodiment is? That is absolutely a preferred embodiment, but unlike the cases, the few cases where this court has allowed the importation of limitations, in those cases the embodiment is described as the invention, repeatedly. It is never described. That is, this embodiment that's being imported is never described in the 40 patents as the invention. So when the court is looking to construe a graphical representation and goes to the specification and the preferred embodiment is a map of a classroom, what's wrong with that? What's wrong with that is what this court has identified in its jurisprudence. The patentee is allowed to claim its invention broader than a preferred embodiment. Did you claim a list? We, the patentee here, claimed a graphical representation of a classroom and then defined classroom in the specification as being this at least partially virtual space in which participants can interact. That's the definition. That was the patentee's right to claim. This court's case has made clear that there are only limited circumstances in which the patentee's judgment and decision in that case should be limited, and this is just not one of them. It does not fit under any of the exceptions. I'll note that there's nothing in the record that suggests that this map or the location of the participants was required to distinguish over a prior article. The district court relies on a Bell Atlantic case and a network case from this court. How do you respond to those? Bell Atlantic is pre-Phillips. Those network. And both of them, I think, reflect the time when this court had a somewhat broader view of the specification and how it would affect the claims. Why isn't this a case that belongs on the branch rather than the trunk, as I characterized in our earlier argument? Because it doesn't fall into one of the special circumstances. We've talked, I think, about all three of them, but in this case, there are no words, no implications of the patentee intended to limit the claim to that body. In fact, it's the opposite, using terms like to tether the claim to the statement of the invention. In no place is that body described as the invention. And finally, in no instance does the prosecution history indicate that this graphical map showing the location of the participants was required over the prior article. Is the module a means plus function claim? Not in this instance, because that's not the claim term at issue. The claim term at issue was the distributed learning control module. And here, and I believe I can be very brief on this point, this court's case law, again, is that the presumption that Section 112, Paragraph 6 does not apply is a strong one. And it essentially requires the defendant, who has the burden here, to show that the limitation is essentially devoid of anything that can be described as structure. And yet here, at page 33 of the appendix, the district court admitted, acknowledged, although it discloses some information regarding composition of the control module, and then goes on to make just a legal conclusion, contrary to the law, stating that it didn't disclose an algorithm, which is the second step, that after finding that that presumption had been overcome, whether or not there's sufficient structure. The court just missed it. Was the algorithm described in the claim? There's no algorithm in the claim, but there is an algorithm in the specification. So if you want to understand what a module is, you have to go to the specification, given that there's no algorithm in the claim. I don't believe that's the case here, because module is accompanied in the claim by preceding language that's descriptive, the digital learning control module. That is not in a vacuum. The specification and other parts of the claim discuss what the digital learning control model does within the digital learning server. And then there's additional language directly within the claim, Judge Reina, that talks about what the digital learning control model has as its apps. So you're arguing that the phrase distributed learning control module has a reasonably well understood meaning as structure. We would not argue that it's generally known in the art, but we would argue that certainly with respect to the specification and the other claim language, it did not require an algorithm in this case. And in fact, that just assumes that the presumption has been rebutted, that it's required to find structure. Well, I do think that the question is whether that phrase has a reasonably well understood meaning as structure or not. It is the question. Because the presumption that 112.6 doesn't apply is particularly difficult to overcome. And you have to overcome it by, the other side has to overcome it by establishing that it has a reasonably well understood meaning as structure. I don't believe that the other side can overcome it by simply showing that it does not have that. That's, I guess, the argument we're making. That that is not the only way. That is not enough to overcome the presumption. Here, and I point the court, I think, to its opinion in the Inventeo case, which is the terms there were a modernizing device and a computing unit. And those were found not to implicate section 112, paragraph 6, which means we never get to the question of an algorithm. This case is just like that case. I'll reserve that. Thank you, Mr. Williams. Let's hear from Mr. Glickenstein. Good morning, Your Honors, and may it please the Court, for Glickenstein. I'm arguing this morning on behalf of all of the athletes, although I only represent Microsoft, Citrix, and Adobe. With respect to both of the issues, Your Honors, that are presented on this appeal, the result my brother advocates for would render it impossible for anyone to know what is and what is not covered by these claims. With respect to the first issue of the graphical display representative of a classroom, appellant's proposed construction is a viewable illustration of an at least partially virtual space that allows for certain degrees of interaction. That proposal strips the claim entirely of all notions of what it means to graph. The time language is very broad. Graphical display. It's very broad. It's like member or device. And there's nothing in the specification that says the invention is something narrow. It only describes embodiments. Well, Your Honor, with respect to the first point... You wouldn't be misled reading this, would you, at all? I would have no basis from the claim language itself to understand the needs and bounds of what a graphical display representative of a classroom is. That is the type of claim term that really... Well, it's a graphical display comprising a classroom region. There are two very similar terms here for construction. I don't think there's any question that they are being construed sort of in the same manner, although they are phrased differently. The claim one is the representative one, but the other, I just gave you the 17. Right. Right. In that claim, it's a classroom region. The first graphical display comprising a classroom region for representing... So the concepts of representation of a classroom environment is present in both Claim 1 and 17. And in both instances, this is really a perfect illustration of why Phillips says the specification is the single best guide to the meaning of claim terms. Those terms, standing alone, when read as part of the claim, are ambiguous with regard to what the needs and bounds are. They naturally invite the reader to consult... Graphical display. It's pretty clear, isn't it, what a graphical display is? Well, I think the real issue... Yes, Your Honor, I think that is. And it's a graphical display of a classroom region? In some representative way of what a classroom is. And that begs a very important question, Your Honor, which is what did the patentee, what did the inventor have in mind with regard to the depiction of a classroom? And the specification is clear, literally from the beginning to the end, that the classroom depiction contemplated is a colloquial classroom. Column 5 says very clearly this classroom is a, quote, metaphor. And in case you didn't catch it in Column 5, they put it in the abstract. So the first thing you read is telling you we're talking about a teaching environment and the classroom is a metaphor. That's right, Your Honor, it does. And that actually is... I'm trying to figure out what's hard to understand here. Well, it's a question of how the specification explains what a classroom metaphor is. And if you were on the other side, you'd be screaming at us for importing limitations, right? This is not... Nowhere does it say pictorial map in the claim. Where does it say indicating the location of each student in the claim? Those are very specific limitations that are not in the claim. They are hallmarks of what it means to be a graphical representation of a classroom. They are one graphical representation, but we can all think of many more, can't we? Well, yes, Your Honor, but what's interesting is the specification answers that question too. It's a metaphor. It says it's a metaphor. And it describes the particular settings as being either preferable or embodiment. Well, the first sentence of the summary of the invention says that the problem asserted in the background is solved by use, yes, of a classroom or auditorium-like metaphor. What is the problem that was solved? The problem that was solved was people knew what traditional, conventional, and colloquial classrooms were. They wanted to bring people together from diverse locations, and the Internet may have solved the tyranny of distance problem, but what it didn't address is the fact that people... No, no, no, this is a cyber classroom. By the way, I'm teaching a class right now that is occurring in three countries at the same time. I've got students in India, Germany, and the United States at the same time, and I'm, by the way, communicating with them over a computer. I'm wondering if I'm using this invention, but... One of the central objectives, this is not just a matter, as my brother stated at the outset... This isn't hard to figure out. By the way, one of the classrooms sits in a circle. They don't all sit facing. Your Honor, one of the things that the district court's construction does is it does not adopt the preferred embodiment of the figure six image showing sets of rows... It says pictorial map... Well, pictorial map... With a location of each student, but where do I find that in the claims? In the claims, it is the graphical representation of a classroom, which begs the question, what classroom was contemplated? That is an ambiguous claim term. That there's been no dispute from the beginning of this case requires construction. This is not an ordinary meeting case. Their position and ours from the outset has been the parties agree that this term needs construction. Their proposed construction doesn't use a single word of the claim language in question. They, too, agree that the claim language doesn't do the job in this case. And the place to go is the intrinsic record. And the intrinsic record says it's more than just interaction, which really is what their entire proposed construction boils down to. The district court said the specification shows that the patentee intended only one type of graphical display, a display that included a map. Where in the specification does it say that? Your Honor, there's no suggestion that I have seen in the specification that there are other types of graphical representations of a classroom. The way I understand that sentence is that if you review the entirety of this... Wait, wait, wait, wait, wait. The district court says the specification shows that the patentee intended only one type. Where in the specification does it say that? Well, Your Honor, the... doesn't support this statement. The court's construction goes well beyond one example. What the court below did was abstract out what are the characteristics, what are the hallmarks of a conventional, typical, and colloquial classroom. If that's what this invention was directed to... I still haven't heard anything that indicates where in the specification it says the patentee intended only one type of display. Where do you get the conventional, colloquial, and understood classroom from the specification? Thank you, Your Honor. I think I can address both questions with a single answer, at least I'll try. It really is a question of what the objectives of the specification were. The patentee said traditional classroom instruction, and that language is in claim one, I'm sorry, column one, I misspoke, line 28. It talks about conventional training methods include providing manuals and or classroom instruction. They're talking about colloquial, typical, normal classrooms. The one problem with that is you have to bring people together. Well, different classrooms in different places look very different. One hallmark, though, Your Honor, is that... In a colloquial classroom in South Africa might be just a room with a couple of mats on the floor. But one hallmark of a classroom is you know who the presenter are, who the presenters are, and who the students are by where they are, and what their roles are in that classroom, and the district course construction fairly embraces that. For example, if you were to take my brother's proposed construction on this issue, and make it merely a viewable illustration representative of a partially virtual space, that could be a graphical representation of a courtroom. I'm going on, reading on through here and finding so many things that go a different direction. Just one strikes me quickly, column two, line 14. Internet provides a classroom or auditorium-like metaphor. Classroom-like metaphor. Auditorium-like metaphor. To at least one presenter and at least one audience member. This envisions having one person. What, could be one? One-on-one instruction. Yes, Your Honor. And they would know who is who by where they are. And it can simultaneously support up to thousands of participants. The notion of a classroom metaphor. So a thousand, how would I get a thousand little boxes like that on one screen? Or 2,000. I have on occasions taught 5,000 at one time. How would I get that on a little box? Well, the first answer is the patent certainly doesn't say. Because it's not required by the patent, right? But there are many ways in which that could be done. You could group people by, for example, you mentioned you're teaching a class in three different countries. You could have a region that would represent students in one country and a different graphical region for students in a different country, etc. So you're already seeing graphical representations beyond what's shown in figure six. I agree with you. That term is broader than figure six. And I think, Your Honor, that the court's construction really does embrace that. I mean, if you envision conventional types of classrooms, I mean, the type shown in figure six is one. But, of course, there could be a… But a pictorial map that shows a participant by location requires, in my example where I taught 5,000 at one time, how am I going to do that? The pictorial map would show… 5,000 little dots. It could be done in a collective way, illustratively. And the specification is discussing a much… Your explanation is starting to sound more ambiguous and far-fetched than the language of the claim, which is quite straightforward. Well, Your Honor, the specification establishes that the classroom or auditorium-like metaphor is the way that the invention achieves its objective of providing an easy-to-understand tool. That's one of the objectives of the patent. It is to allow somebody with very little training to come in and look at a layout and instantly recognize that that is a classroom. And I know it's a classroom because of all of my life experiences. I don't need to be trained on it. That identifies the need to be trained about arcane software as a disadvantage. And then, as I said in my opening comments, from beginning to end, it identifies the advantages of simplicity and ease of understanding. The very last portion of the discussion of the specification says, you know, skills and behavior… I'm looking at column 10, line 16. Skills and behaviors learned by the participants in other learning environments, including real classrooms, are immediately applicable to the environment provided by the system. Module. Sorry, Your Honor? Module. Module, Your Honor. The term module, I don't think there's any dispute in this case that that term, standing alone, does not convey structure. This renders it different than the court's precedent on the circuit line of cases, such as power integration. But I'm allowed to claim a member or a device or a mechanism or a software, or I could claim an element, or I could claim in dozens of different ways. I could claim a rule or a whatever, right? Your Honor is absolutely correct. And those don't automatically become means plus function because there's no picture beside them in the dictionary. There's no automatic at all. Your Honor is absolutely correct. This is an issue of substance, not form. I mean, there are certain words that do. Except that we have said when you use means, you're stuck with means. When you're very careful to avoid means, you have avoided it unless someone can overcome the strong presumption against that. Well, this is a legal issue of claim construction, and it's a matter of what the intrinsic record says. There's no question on this case, as my brother said in his comments, that the distributed learning control module is not a term of art. It does not connote structure. What that means is we just simply need to look at the rest of the claim language and ask the simple question, is there structure? Is there an algorithm disclosed in here for performing the coordinated function? And that's the center of the judge's decision. It's not the – this distributed learning control module does many, many things. The specification at column four lines – I guess it's 42 to 45, 46 – talking about these modules being performed by software or hardware, and the modules, according to one embodiment, are software programs stored on the storage device, et cetera, et cetera. I mean, that's a reference to those things being understood as structure of some sort, either hardware or software. What's missing, Your Honor, is any recitation of how the coordinating function is performed. In fact, the specification doesn't even use the word coordinating. It's not even clear what the function is, but what is clear is there's no algorithm. Well, maybe there's an enablement for a written description problem of some sort, but the question of whether the heavy presumption that 112.6 doesn't apply is overcome here turns on whether that has some sort of well-understood meaning as structure. And the specification does talk about this as being either hardware or software, and it talks about that it has certain inputs, certain outputs, and it interacts with certain things, which all sounds like structure, and the only testimony I read in the record was Dr. Suri's declaration, which supports that, not very strongly, but supports it. Well, Your Honor, this is really a two-prong analysis. The first question is, of course, does 112.6 apply in the first instance? And that question is answered by determining whether the claim itself recites sufficient structure, in this case an algorithm, to perform the recited function, which in this case is the coordinating function. That's the test. Now, it's true that Inventio says that you can look to the specification to construe the terminology. That's all true, but there's no question in this case that the distributed learning control module language does not convey some sense of ordinary meaning or industry-accepted terminology. So what we're left with are just the bare words of the claim. That makes it an issue, a conventional issue of claim construction, which is handled routinely on the basis of intrinsic evidence, and the role of extrinsic evidence, particularly expert testimony on that application, is limited at best. And here, Dr. Sori, actually, in his first declaration, simply assumed that the court was correct, or I'm sorry, simply assumed that the claim term was subject to 112.6. So on that threshold question, which is really a legal question, this language of strong presumption, I know, crept in in the Lighting World case, but the precedent such as the CCI case, if I'm remembering that correctly, that the Lighting World case cites for that proposition actually doesn't use the word strong presumption at all. It doesn't matter, though, on these facts. These things don't creep in. I misspoke. They are statements of the court as to its rules. I meant no disrespect, Your Honor. Yeah, I know. My point, Your Honor, is I wanted to understand what the real evidentiary consequences of that language in the Lighting World were. Can you give us a final comment here, Mr. Glickenstein? Yes, Your Honor. I think this is a classic black box case. I think this court's decision last year in the Noah case is directly on point. In that case, as in this case, the claim term in question recited multiple functions, and the court said we need to find an algorithm in the specification for every single function of that claim. And here there is none. The module here is part of a server, right? And we all understand that to be pretty clear structure. As sort of a general purpose type computer, yes, Your Honor. Yeah, okay, thank you. Server isn't a means, is it? On this record, Your Honor. It can be broadened term, too, can it? There's lots of different ways you can see a server. On the same argument, I could make it a means plus function claim, couldn't I? A server for performing the functions of calculating. I have just given you a means plus function claim or not? I think, Your Honor, in this court's analysis of that similar issue in the Katz case, it would come down to whether the term server sort of natively performs the recited functions of the claim. If it doesn't, then yes, it's a means plus function. Thank you. Thank you. Mr. Williams. Thank you, Your Honor. Let me just very briefly touch on issue one. And my friend repeatedly referred to the hallmarks of the invention. I am unaware of any law allowing the embodiment to limit claim language because there is some sort of hallmark of the invention. It's clearly not the rule, and I believe the court correctly identified that. With respect to module, what has happened here, and I believe the district court fell victim to this as well, but my friend said the same thing, and that is conflating how you overcome the strong presumption with what happens if the presumption has been overcome to define, to see whether there's sufficient structure. And I believe he actually said that you can, in order, and I'm not sure how this works, but that somehow the presumption is overcome unless it is shown that there's sufficient structure. That's not the law. Everyone agrees that means is not used here. Therefore, Section 112, Paragraph 6 does not apply unless the defendant, and again, I'm going to quote this court's very recent decision in Clovell case. The defendant has to show that the limitation is essentially devoid of anything that can be described as structure. Judge Lynn pointed to a number of places where there's structure, but more importantly, the district court pointed to structure and then concluded with that analysis, merging the two questions. This is a case where there was clear error on both points, and we would urge the court to reverse and remand. Thank you, Mr. Williamson. Thank you for your help this morning. All rise. The honorable court is adjourned until tomorrow morning at 10 a.m.